**TRUMBULL CORPORATION,**
**Appellant,**

v.

**BOSS CONSTRUCTION, INC., a Pennsylvania Corporation, A & L, Inc., a Pennsylvania Corporation, and Safeco Insurance Company of America, Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 19, 1999.

Filed Feb. 17, 2000.

**3.** This testimony may, of course, be presented at a single hearing.

Kurt F. Fernsler, Pittsburgh, for appellant.

Richard I. Thomas, Pittsburgh, for appellees.

Before FORD ELLIOTT, ORIE MELVIN and OLSZEWSKI, JJ.

ORIE MELVIN, J.:

¶ 1 Appellant, Trumbull Corporation, appeals from the entry of judgment in favor of Appellees, Boss Construction, Inc. (Boss), A & L, Inc. (A & L) and Safeco Insurance Company of America (Safeco) on Trumbull's assumpsit action seeking payment for materials supplied to Boss in connection with a public contract for the resurfacing of a section of Interstate 79. Because the statutes at issue are conflicting and draw in question the interpretation of acts of the General Assembly, which this Court has previously held regulates the affairs of political subdivisions, municipalities, or local authorities, we find that it is appropriate to transfer this case to the jurisdiction of the Commonwealth Court.

¶ 2 The Commonwealth of Pennsylvania, by and through the Secretary of Transportation (PennDOT), entered into a public contract with A & L whereby A & L was to act as general contractor for the improvement of Section S11 of Interstate 79 in Washington County, Pennsylvania (the Contract). As statutorily required, A & L obtained a labor and material payment bond (the Bond), issued by Safeco. The Bond expressly incorporated the Public Works Contractors' Bond Law of 1967, 8 P.S. §§ 191–202 (the Bond Law). Thereafter, A & L subcontracted with Boss to perform a portion of the resurfacing work necessary under the Contract. In connection with this work, Boss subcontracted with Trumbull to supply asphaltic road materials.

¶ 3 On March 20, 1997, pursuant to Boss' purchase order Trumbull supplied forty (40) lots of asphaltic road materials, which materials were accepted and incorporated into the project. On March 24, 1997, Trumbull invoiced Boss for the materials in the amount of $19,156.35, and after repeated requests Boss failed to pay Trumbull for the materials. Since payment was not forthcoming from Boss, Trumbull made a claim for payment upon the Bond by sending a notice by certified mail to A & L and Safeco dated June 18, 1997. As required by the Bond Law this notice stated the amount claimed and for whom the materials were furnished. The notice was received by A & L on June 19, 1997 and by Safeco on June 23, 1997.

¶ 4 Trumbull next filed the instant civil action in the Court of Common Pleas of Allegheny County on January 14, 1998. Count I of the Complaint sought to recover against Boss for breach of contract. Count II of the Complaint sought recovery against A & L for an alleged oral promise by A & L to pay Boss' debt to Trumbull. Count III of the Complaint sought to recover under the Bond Law from A & L and its surety Safeco. Boss failed to respond, and a default judgment was entered against it on March 17, 1998.[1]

¶ 5 Following a non-jury trial the court entered its verdict on October 28, 1998 finding in favor of A & L and Safeco and further acknowledging the default judgment against Boss. Trumbull filed a timely Motion for Post–Trial Relief seeking a judgment notwithstanding the verdict or new trial. By Order dated February 11, 1999 and filed February 17, 1999, the trial court denied Trumbull's Motion for Post–Trial Relief and entered judgment. Trumbull filed a timely Notice of Appeal on March 4, 1999.

¶ 6 On appeal Trumbull presents the following questions for our review:

I. Whether the Trial Court committed an error of law in finding that Section 9 of the Statutes [sic] dealing with the "Award and Execution of Public Contracts" 73 P.S.

---

1. Trumbull was unable to collect payment of the default judgment from Boss.

[§ ] 1621 *et seq.,* (the "Prompt Pay Act") barred a claim made on a payment bond, where the bond expressly incorporates the Public Works Contractors['] Bond Law of 1967, 8 P.S. § 191 *et seq.,* but makes no reference to or incorporation of the Prompt Pay Act?

II.  Whether there was sufficient evidence of record to support the finding that Appellees A & L and Safeco complied with the terms of 73 P.S. § 1626.9, where all payments were made by joint checks to Boss Construction and entities other than Appellant Trumbull?

III. Whether the Trial Court committed an error of law in precluding Appellant Trumbull from presenting or eliciting evidence regarding an oral promise by Appellee A & L to pay the debt owed Appellant Trumbull, where such evidence would have shown that Appellee A & L's main purpose in making the promise was its own business or pecuniary benefit?

Appellant's brief at 3.

¶ 7 The pertinent provisions of the Bond Law permitting an action on the payment bond read as follows:

### § 194.  Actions on payment bonds; service of notice

(a) Subject to the provisions of subsection (b) hereof, any claimant who has performed labor or furnished material in the prosecution of the work provided for in any contract for which a payment bond has been given, pursuant to the provisions of subsection (a) of section 3 of this act, and who has not been paid in full therefor before the expiration of ninety days after the day on which such claimant performed the last of such labor or furnished the last of such materials for which he claims payments, may bring an action on such payment bond in his own name, in assumpsit, to recover any amount due him for such labor or material, and may prosecute such action

to final judgment and have execution on the judgment.

(b) Any claimant who has a direct contractual relationship with any subcontractor of the prime contractor who gave such payment bond but has no contractual relationship, express or implied, with such prime contractor may bring an action on the payment bond only if he has given written notice to such contractor within ninety days from the date on which the claimant performed the last of the labor or furnished the last of the materials for which he claims payment, stating with substantial accuracy the amount claimed and the name of the person for whom the work was performed or to whom the material was furnished.

Notice shall be served by registered or certified mail, postage prepaid, in an envelope addressed to such contractor at any place where his office is regularly maintained for the transaction of business or served in any manner in which legal process may be served in the manner now or hereafter provided by law for the service of a summons, except that such service need not be made by a public officer.

8 P.S. § 194.

¶ 8 In sum, pursuant to § 194(a) Trumbull as a claimant who "furnished materials in the prosecution of the work... for which a payment bond has been given," is permitted to file an action on the Bond "in assumpsit, to recover any amount due him for such ... material." Subsection (b) serves to limit Trumbull's filing of an action only if Trumbull fails to provide the contractor, here A & L, with written notice within ninety days from the date on which the claimant furnished the last of the materials for which he claims payment. The parties do not dispute and the record confirms that Trumbull satisfied all the requisites of § 194. Rather, A & L and Safeco asserted as an affirmative defense the applicability of § 1626.9(b) of the law dealing

with the "Award and Execution of Public Contracts." 73 P.S. §§ 1621–1626.9.[2] This section provides:

§ 1626.9 Claims by innocent parties

(b) Once a contractor has made payment to the subcontractor according to the provisions of this act future claims for payment against the contractor or the contractor's surety by parties owed payment from the subcontractor which has been paid shall be barred.

¶ 9 A & L presented evidence that after it received payment from PennDot it paid Boss its earned share pursuant to what was referred to as "Estimate 27." Thus, A & L argued that its payments to Boss pursuant to joint check agreements with other subcontractors of Boss, constituted payment under 73 P.S. § 1626.9. The trial court agreed holding that "Trumbull's claim for recovery from the contractor, A & L, and its surety, Safeco, is clearly barred by Section 1626.9." Trial Court Opinion, 5/6/99, at 2.

¶ 10 At trial, and now on appeal, Trumbull argues that because the Bond Law was specifically incorporated into the terms of the Bond and 73 P.S. §§ 1621–1626.9 was not; it is the Bond Law that controls its claim and the Appellees' defenses. The trial court never addressed the apparent conflict between these two statutes, resolution of which is necessary to a proper disposition of this appeal. When previously confronted with issues involving the interpretation of the Bond Law this Court has determined that jurisdiction over such appeal properly lies with the Commonwealth Court. *Valley Forge Industries v. Armand Constr.*, 248 Pa.Super. 53, 374 A.2d 1312 (1977).

¶ 11 The Judicial Code, in pertinent part, provides:

§ 762. Appeals from the courts of common pleas

(a) General Rule.—Except as provided in subsection (b), the Commonwealth Court shall have *exclusive jurisdiction* of appeals from final orders of the courts of common pleas in the following cases:

* * * *

(4) Local government civil and criminal matters.

(i) All actions or proceedings ... where is drawn in question the application, interpretation or enforcement of any:

(A) statute regulating the affairs of political subdivisions, municipality and other local authorities or other public corporations or of the officers, employees or agents thereof acting in their official capacity.

42 Pa.C.S.A. § 762(a)(4)(i)(A). (Emphasis added.)

¶ 12 In *Valley Forge*, this Court, *en banc*, concluded that the Bond Law "is an 'act of the General Assembly regulating the affairs of political subdivisions, municipality and other local authorities or other public corporations ... within the meaning of [§ 762 of the Judicial Code].'"[3] *Valley Forge*, 374 A.2d at 1315. Therefore, we determined that the appeal properly lay with the Commonwealth Court. Nonetheless, we recognize, as was the case in *Valley Forge*, that since the Appellees did not contest our jurisdiction, the appeal is perfected and we have discretion to retain jurisdiction. *Id.* at 1316. *See also* 42 Pa.

**2.** Act of November 26, 1978, P.L. 1309, No. 317, as amended by Act of December 12, 1994, P.L. 1042, No. 142, effective in 60 days. This legislation was subsequently repealed and recodified as part of the Commonwealth Procurement Code by Act of May 15, 1998, P.L. 358, No. 57, § 1, effective in 180 days. Now 62 Pa.C.S.A. § 3939(b).

**3.** The *Valley Forge* Court construed the predecessor statute known as the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. IV, § 402 (17 P.S. § 211.402).

C.S.A. § 704(a) and Pa.R.A.P. 741(a).[4]

¶ 13 In making our determination with respect to retention we must balance the interests of the parties and matters of judicial economy against other factors such as: (1) whether the case has already been transferred, *Karpe v. Borough of Stroudsburg*, 315 Pa.Super. 185, 461 A.2d 859 (1983); (2) whether our retention will disrupt the legislatively ordained division of labor between the intermediate appellate courts; and (3) whether there is a possibility of establishing two conflicting lines of authority on a particular subject. *Newman v. Thorn*, 359 Pa.Super. 274, 518 A.2d 1231 (1986). Moreover, each transfer should be decided on a case-by-case basis. *Id.* Consideration of these factors leads us to conclude that we should transfer jurisdiction to the Commonwealth Court.

¶ 14 In *United Plate Glass v. Metal Trims Industries*, 351 Pa.Super. 228, 505 A.2d 613 (1986), we held that: "the division of labor between this [C]ourt and our sister court would be served rather than disrupted if the Commonwealth Court heard **all appeals involving the application and interpretation** of the Pennsylvania Public Work Contractors' Bond Law." *Id.* at 616 (emphasis added). The United Plate Glass Company (UPG), like Trumbull, supplied materials to a subcontractor (Metal Trims) who was under contract with the general contractor (Brisco) on a public works project. The Commonwealth through its Department of General Services contracted with Brisco to build the Pittsburgh Convention Center. When Metal Trims failed to pay UPG it filed suit to recover on the payment bond pursuant to the Bond Law. The issue involved the interpretation of the statute of limitations provision contained in the Bond Law.

¶ 15 In *General Equipment Manufacturers v. Westfield Insurance Co.*, 405 Pa.Super. 550, 592 A.2d 1349 (1991), relying on *Valley Forge* and *United Plate Glass*, we again transferred an appeal involving the interpretation of the interplay between the requirements of the Bond Law and the bond requirements under the Public School Code. Therein we noted that transfer was appropriate "in order to avoid any inconsistencies in interpretation of the Bond Law and the Public School Code as it concerns the proof of payment owed, the evidence admissible, and the defenses allowed. . . ." *Id.* at 1351. Moreover, the record reflects this case has not been previously transferred.

¶ 16 Thus, while undoubtedly the parties will experience some additional delay and expense upon transfer before resolution of this appeal, the remaining factors militate in favor of transfer. The question here presented has not been previously addressed, and thus it is not simply a matter of our applying a settled principle of law to the facts as found by the trial court. As noted in *Valley Forge* "existing and future bonds on thousands of public works projects" may be affected. Accordingly, as in *Valley Forge, United Plate Glass* and *General Equipment, supra,* we believe it better to defer to the Commonwealth Court's expertise for an interpretation, as it has been designated by the legislature as the appropriate forum.

¶ 17 Case transferred to Commonwealth Court. Jurisdiction relinquished.

---

4. This Court may raise *sua sponte* the issue of whether we should transfer an appeal to the Commonwealth Court. *Brady Contracting Co. v. West Manchester Twp. Sewer Auth.*, 338 Pa.Super. 144, 487 A.2d 894 (1985).